BLUMENSCHIEN, APPELLEE, *v.* THE MACCABEES OF
DETROIT, MICHIGAN, APPELLANT.

284

(No. 219—Decided November 6, 1947.)

*Mr. William L. Coleman,* for appellee.
*Mr. Paul R. Gingher* and *Mr. J. Paul McNamara,* for appellant.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Union county, in an action wherein appellee herein, Emanuel Blumenschien, was plaintiff and appellant herein, The Maccabees of Detroit, Michigan, was defendant.

On the trial in the Common Pleas Court a jury was waived and the case was tried to the court upon the pleadings and the evidence, and the court found that there was due to plaintiff from defendant, upon the

cause of action pleaded in the petition, the sum of $4,718.40, with interest from May 1, 1944, amounting in all to $5,810.80, with interest computed to May 1, 1947; and further found that there was due defendant from plaintiff, upon the cause of action pleaded in defendant's cross-petition, the sum of $756 with interest from October 30, 1942, amounting in all to $963.90, with interest computed to May 1, 1947; and further found that the defendant is entitled to have the amount of $963.90 credited upon the amount due plaintiff from defendant, upon the cause of action pleaded in the petition, leaving a balance due plaintiff of $4.846.90, with interest from May 1, 1947. The court rendered judgment in the amount mentioned, and for costs, in favor of plaintiff and against defendant.

That is the judgment from which this appeal is taken.

The petition states a single cause of action, in short, that Blumenschien purchased two contracts of insurance in 1936 through one Charles A. Buchanan as agent of the defendant; that Blumenschien paid the premiums on the contracts of insurance in 1936, 1937, 1938, 1939, 1940, 1941 and 1942; that Buchanan, in May 1943, represented "to plaintiff that if he would make a cash payment of $1,780 the company would accept the same in full settlement of the remaining premiums due on both said policies"; that Blumenschien paid $1,780 to Buchanan; and "that the defendant refuses to comply with the terms of the agreement made by their said agent, Charles A. Buchanan, to accept said $1,780 in full settlement of all premiums due on said policies and has by reason thereof violated said agreement."

No allegation is made that the defendant had cancelled, or intended to cancel, the contracts of insur-

ance; and no allegations are made of any fraud or misrepresentation or wrongdoing by either Buchanan or the defendant in connection with the two policies of insurance issued by defendant to plaintiff.

The prayer of the petition is that plaintiff recover each annual premium on both policies, plus interest from date of payment, and also the $1,780 paid Buchanan by plaintiff in May 1943.

Three defenses are pleaded in the answer.

In the first defense the defendant admits the issuance of the contracts of insurance and the payment of the annual premiums thereon, as alleged in the petition. The other allegations are denied.

For its second defense the defendant alleges the legal character of the defendant and that as such it was without authority to make a contract such as is alleged to have been made by Buchanan with Blumenschien in May 1943.

For its third defense the defendant alleges that it did not authorize Buchanan to make the alleged 1943 agreement with Blumenschien.

Defendant's cross-petition sets forth the facts in respect to certain loans made to Blumenschien by the defendant, and asks that such loans be declared a valid indebtedness from plaintiff to the defendant and a lien on the contracts of insurance, and for such other and further relief as it may be entitled to in the premises.

The answer of the plaintiff to the cross-petition denies the allegations thereof.

The case was submitted to the trial court upon an agreed statement of facts and additional evidence introduced at the trial.

From the statement of facts, the exhibits thereto and the additional evidence introduced, the following appears:

1. Defendant is a fraternal benefit society, organized and existing under the code of fraternal laws of the state of Michigan, and, at all times herein involved, was authorized to do business in Ohio as a fraternal benefit society.

2. On September 28, 1936, plaintiff made application to defendant, through Charles A. Buchanan, a representative of defendant, for a policy of insurance (known as a certificate) designated twenty-payment life, in the sum of $4,000. On November 1, 1936, defendant issued its certificate No. 1351726 to plaintiff.

3. On or about October 20, 1936, plaintiff made application to defendant, through Buchanan, for another policy of insurance (known as a certificate) designated twenty-payment life, in the sum of $4,000. On December 1, 1936, defendant issued its certificate No. 1354045 to the plaintiff.

4. At the time each of the aforesaid certificates was issued, plaintiff paid to defendant the sum of $196 as the first annual premium or rate on each of the certificates. Thereafter, on September 1, 1937, October 29, 1938, October 1, 1939, October 1, 1940, October 1, 1941 and October 1, 1942, plaintiff paid to the defendant the sum of $212.20 as the annual premium or rate on certificate No. 1354045.

5. On May 2, 1943, plaintiff paid to Buchanan the sum of $1,280. On May 2, 1943, Buchanan wrote and delivered to plaintiff, on stationery bearing the printed name of defendant at the top thereof and signed "Chas. A. Buchanan, Dist. Manager," an instrument acknowledging the receipt by the signer from Emanuel Blumenschien the sum of $1,280 in full payment for $8,000 life insurance for the complete 20 years. No more was ever to be paid.

It appears from the evidence, and as found by the trial court, that the plaintiff had paid Buchanan the

sum of $500 on May 1, 1943, to apply on the purchase price of the paid-up insurance referred to in the above-mentioned instrument.

6. Buchanan at the time of the payment on May 2, 1943, orally stated to plaintiff that it was necessary to send both certificates to defendant to have the final payments endorsed thereon. On such date plaintiff delivered both certificates to Buchanan. Neither of the certificates have been returned to plaintiff.

7. At all times herein involved after October 20, 1937, and including May 2, 1943, Buchanan was employed by defendant under a contract in writing prescribing "that the services required in the said employment shall consist in writing new business for the association, and looking after its general welfare in the district assigned" to him.

8. The defendant did not authorize Buchanan to accept the payment referred to in numbered paragraph 5, *supra,* or to issue and deliver the instrument purporting to be a receipt for the $1,780 above mentioned, or to make the statements referred to in numbered paragraph 6, *supra.*

9. The defendant did not receive the sum of $1,280 or the sum of $500 referred to in numbered paragraph 5, or any part thereof. The defendant did not receive the two certificates which plaintiff gave to Buchanan and has at no time and does not now know where such certificates are.

10. Defendant had no knowledge of the facts referred to in numbered paragraphs 5 and 6 until on or about the first day of July 1943, at which time defendant advised plaintiff (a) that Buchanan was not authorized to do any of the things referred to in numbered paragraphs 5 and 6, (b) that Buchanan was not authorized to accept $1,280, $1,780 or any other sum in full settlement of the premiums thereafter to

become due on the certificates, and (c) that the defendant was not liable for the statements and acts of Buchanan, referred to in numbered paragraphs 5 and 6.

11. Defendant refuses to give to plaintiff paid-up insurance in the sum of $8,000.

12. Defendant refuses to repay to plaintiff all the amounts he paid to defendant as premiums on the certificates, plus the $1,280 paid to Buchanan on May 2, 1943, and to cancel such certificates.

13. Defendant did not authorize Buchanan to represent to plaintiff that the defendant would accept $1,280 or any other sum on May 2, 1943, or any other date in full settlement of all the remaining premiums due on the two certificates. Defendant did not authorize Buchanan to accept $1,280 or any other sum from plaintiff in payment of all the remaining premiums due on the certificates.

14. The sum required by the terms of the certificates to be paid by plaintiff to defendant on May 1, 1943, to fully pay up the two certificates held by plaintiff is $4,803.49.

15. Attached to and made a part of the agreed statement of facts and marked, respectively, exhibits A, B, C, D, E, F and F-1, are a true and correct copy of the code of fraternal laws in full force and effect in the state of Michigan on May 1, 1943; a true and correct copy of the certificate mentioned in the above-designated paragraph 2; a true and correct copy of the certificate mentioned in the above-designated paragraph 3; the paper writing referred to in the above-designated 5; the written contract of employment of Buchanan, mentioned in the above-designated paragraph 7; a true and correct copy of the laws of defendant in full force and effect in 1936; and a true and correct copy of the laws of the defendant in full force and effect in 1943.

From the attached copies of each of the contracts issued by defendant to Blumenschien in 1936, it is shown that the annual rate of each contract of insurance is $212.20, the semi-annual rate $108.40, and the monthly rate $18.40. Each policy is designated "twenty-payment life."

On the first page of each contract is the statement:

"This certificate is subject to the conditions and privileges recited on succeeding pages hereof and of any riders attached hereto as fully as if recited herein over the signatures hereto attached."

On the second page, under the caption, "Benefits, Conditions and Privileges," in paragraph designated "10. Agreement," it is provided:

"It is agreed by the member holding this certificate that the certificate, the charter or articles of incorporation, the laws of the association, * * * with all amendments to each thereto shall constitute the agreement between the association and the member * * *."

The provision last mentioned is in conformity with the requirements of Section 9469, General Code, which provides:

"Every certificate issued by any such society * * * shall provide that the certificate, the charter or articles of incorporation * * * the constitution and laws of the society * * * and all amendments to each thereof, shall constitute the agreement between the society and the member * * *."

The contracts above mentioned further provide in paragraph designated "12. Modification":

"None of the terms of this certificate can be modified in any case unless by endorsement hereon, signed by the Supreme Commander, Supreme Record Keeper or Actuary * * *."

17. The laws of the defendant, in force at the time the contracts here involved were issued, provided:

"Section 313. The association may issue life benefit certificates on the following plans: (e) twenty-payment life. * * *

"The rates for these certificates shall be computed on the American experience table of mortality, with an interest assumption of not more than 4%. * * *

"All certificates issued under the sanction of the board of trustees shall have rates computed on such mortality basis and such interest assumption of not more than four per cent. as the actuary may recommend, and may provide such benefits as the laws of the state of Michigan from time to time permit."

The laws of defendant, in force in May 1943, are identical to Section 313 above quoted.

An examination of the code of fraternal laws of the state of Michigan discloses that the foregoing laws of defendant were adopted pursuant to and in conformity with such statutes.

18. From the evidence, it appears that each and every premium payment on both the contracts of insurance issued by the defendant to plaintiff were made by the plaintiff to Buchanan.

19. It further appears from the evidence that the defendant made the two loans to the plaintiff, mentioned in defendant's cross-petition, under date of October 30, 1941, one in the sum of $389 on account of certificate No. 1351726 and on the security of such certificate, and one in the sum of $372 on account of certificate No. 1354045 and on the security of such certificate; that the loans bear interest at the rate of six per cent per annum from the date thereof; and that nothing has been paid on the loans except interest from the year October 30, 1941, to October 30, 1942, and it was so found by the trial court.

Section 9466-1, General Code, relating to fraternal beneficial societies and applicable to societies such as the defendant, authorized to do business in the state, prescribes:

"No society shall grant to its members extended and paid up protection, or such withdrawal equities as its constitution and laws may provide, unless the society shall show by the annual valuation hereinafter provided for and by its annual statement that it is accumulating and maintaining the reserve necessary to enable it to do so, under a table of mortality not lower than the American experience table and three and one half per cent interest; provided, that such grants shall in no case exceed in value the portion of the reserve to the credit of such members to whom they are made. * * *"

Under his contract of employment by defendant, Buchanan had express authority to solicit contracts of insurance on behalf of the defendant; and the express authority of "looking after its general welfare in the district" assigned to him is broad enough in terms to authorize him to do any act the performance of which it may lawfully delegate to an agent.

In addition to the express authority mentioned, the defendant, by permitting Buchanan to collect successive premiums on the policies issued by the defendant to the plaintiff, clothed Buchanan with authority to collect, on its behalf, premiums on policies of insurance which he had solicited and which had been issued by the company, as well as policies which he might thereafter solicit on behalf of the company, so that he was clothed with both express and implied authority to act on behalf of the defendant in soliciting the plaintiff to enter into an insurance contract with the defendant for a paid-up life policy, and to collect, on behalf of the company, the premium for such policy.

Whether Buchanan had authority, as agent for the defendant, to bind it to accept the sum of $1,780 in payment for the paid-up insurance, when the sum required by the terms of the certificates of insurance to be paid by plaintiff to defendant on May 1, 1943, to pay up, as paid-up insurance, the two certificates held by plaintiff, is $4,803.49, is another and more difficult question.

The provisions of Section 24.320, Michigan Statutes, relating to certificates of insurance issued by fraternal benefit societies, are identical with the provisions of Section 9469, General Code, above quoted, so that under the laws of both states, the laws of the defendant, including its laws relating to rates for insurance, hereinbefore quoted, constitute a part of any contract of insurance issued by the defendant, binding upon the defendant and any person to whom such certificates are issued.

A fraternal benefit society such as the defendant cannot accumulate and maintain the reserve necessary for it to grant to its members paid-up protection required by the provisions of Section 9466-1, General Code, above mentioned, unless its rates for insurance are computed as prescribed by the laws of defendant, relating to rates, hereinbefore quoted.

As the laws of the defendant, relating to rates, are by statute made a part of any contract of insurance issued by it and such rates are required by statute to be charged by the defendant, it is inhibited by law from issuing or contracting to issue any certificate of insurance for a less rate.

Consequently the defendant could not lawfully issue or contract to issue the certificate of paid-up insurance to the plaintiff on the two certificates of insurance held by plaintiff, which its agent Buchanan agreed it should issue for the sum of $1,780 additional premium,

when the lawful rate for such additional premium for such policy was $4,803.49.

The defendant being inhibited by law from issuing the paid-up policy upon the terms mentioned, Buchanan, as its agent, did not have either express or implied authority to bind it by his agreement with plaintiff to enter into the contract for the issuance of such certificates, no agent having authority to bind his principal by a contract into which the principal is inhibited by law from entering.

Therefore, the contract entered into by Buchanan with plaintiff to issue the paid-up life insurance was not binding upon the defendant and it was consequently not liable for the breach thereof.

However, as above mentioned, Buchanan did have express and implied authority to collect premiums, on behalf of the defendant, on policies issued and proposed to be issued by it. As the defendant did not issue the paid-up policy which Buchanan agreed it should issue, it was legally obligated to return to plaintiff the money paid to Buchanan as premium on the proposed certificate of insurance.

Although the petition is predicated on a claimed breach of contract by the defendant in refusing to issue the certificate of insurance, sufficient facts are pleaded in the petition, and appear in the evidence, to warrant the recovery by plaintiff from defendant, of the amount paid by plaintiff as premium on such policy, with interest from the date such payment was received by Buchanan.

As the two policies issued by defendant to plaintiff were not cancelled by the defendant, and no fraud or wrongdoing on the part of the defendant or its agent Buchanan in securing the applications for such policies, or in the issuance of the same, are charged in the petition or appear in evidence, the plaintiff was not

entitled to recover the amount of premium paid by him on the insurance certificates even if the contract made by Buchanan for the issuance of the paid-up certificate had been binding upon the defendant, as the breach of the contract to issue such paid-up policy would not, under the facts pleaded and in evidence, render the defendant liable to plaintiff for the return of the premiums paid on such policies.

We will turn now to the cause of action pleaded by defendant in its cross-petition.

The following provision, with reference to loan indebtedness of certificates of insurance, appears in each of the certificates mentioned in the cross-petition:

"Failure to pay such indebtedness or to pay interest will not void the certificate, provided that whenever the amount of the total indebtedness, however evidenced, equals or exceeds the cash withdrawal equity increased by all refund additions or accumulations, if any, the certificate shall be void."

Under that provision the loans of the defendant to plaintiff, pleaded in the cross-petition, have been paid or will be paid by offsetting the same against the cash withdrawal equity of plaintiff under the certificates, so there is nothing due on such loans.

For the reasons mentioned, the Common Pleas Court erred in awarding to plaintiff as damages, the amount of the premiums paid by plaintiff on the two certificates issued to him; and also erred in awarding to defendant, on its cross-petition, judgment for the amount of its loans to plaintiff; but did not err in awarding plaintiff judgment for the sum of $1,780, the amount paid by plaintiff to Buchanan, as the premium on a proposed life certificate.

Those errors require a modification of the judgment so that the amount of recovery by plaintiff against the defendant is limited to and fixed at the

principal sum of $1,780, with interest from May 1, 1944, to May 23, 1947, making a total of $2,107.22 bearing interest from May 23, 1947, and the costs incurred by the plaintiff in the Common Pleas Court, and defendant's cross-petition is dismissed. The judgment is modified accordingly, and as modified is affirmed at the costs of defendant.

*Judgment modified and, as modified, affirmed.*

JACKSON, P. J., and MIDDLETON, J., concur.